IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-90-FL

| | | |
|---|---|---|
| JACQUELINE INNOCENTI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WAKEMED, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). (DE 24). The issues raised are ripe for ruling. For the reasons that follow, defendant's motion is granted.

## STATEMENT OF THE CASE

Plaintiff commenced this action on March 2, 2018, alleging discrimination and retaliation on the basis of national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq.. On December 19, 2018, defendant filed the instant motion for judgment on the pleadings, seeking dismissal based on the statute of limitations and failure to state a claim. Defendant relies upon plaintiff's Equal Employment Opportunity Commission ("EEOC") charge of discrimination (DE 25-1).

## STATEMENT OF THE FACTS

The facts alleged in the complaint can be summarized as follows. On October 22, 2012, plaintiff, a Hispanic woman, was hired as a bilingual patient accounts representative by defendant. (Compl. ¶¶ 6, 7). Defendant is a healthcare system with multiple facilities in and around Raleigh,

North Carolina. (Id. ¶ 5). Prior to being hired, defendant imposed a policy restricting employees from speaking Spanish except when talking with patients or when on breaks away from the workplace. (Id. ¶¶ 9, 10). Roughly one month after beginning her job, plaintiff was threatened with disciplinary action if she used Spanish to communicate with other employees. (Id. ¶ 11). Plaintiff raised her concerns with the policy to her supervisors, Sylvia Daniels ("Daniels") and Sherri Allen ("Allen"), but her concerns were ignored. (Id.).

During the course of plaintiff's employment, she noticed and complained of instances where Hispanic employees were treated differently that other employees. (Id. ¶¶ 12, 14). Plaintiff contends defendant enforced company policy regarding vacation, sick days, and tardiness. (Id.). Plaintiff alleges she was denied breaks and reprimanded for leaving her "available" desk lights on. (Id.). She also alleges she was not allowed a desk and faced more significant discipline for workplace misconduct. (Id.).

On February 21, 2013, plaintiff complained to Daniels regarding Allen's behavior, alleging disparate treatment between Hispanic and non-Hispanic employees. (Id. ¶ 15). Approximately three weeks later, plaintiff received a "Level 1 Disciplinary Action" for five separate instances of misconduct. (Id. ¶ 16). On August 27, 2013, plaintiff received a "Level 3 Disciplinary Action" for giving a patient erroneous information during patient registration, which plaintiff alleges was corrected nearly immediately. (Id. ¶ 18).

After complaining of disparate treatment, plaintiff faced various alleged retaliatory actions, such as supervisors yelling at her in front of coworkers, sabotaging her efforts to transfer to other departments, commenting that she was not a good fit for the department, scheduling plaintiff to work so that she could not have a lunch break, and refusing requests for exemption from flu vaccine shots. (Id. ¶ 19). On March 15, 2015, Daniels criticized plaintiff for how she interacted with patients and

2

mimicked her with a belittling and inaccurate Spanish accent. (Id. ¶ 21).

Plaintiff alleges that, as a result of stress stemming from her mistreatment by defendant, she developed anxiety, vertigo, gastritis, and other conditions. (Id. ¶ 23). Plaintiff filed a charge of discrimination on March 9, 2015, and subsequently quit her job on April 18, 2015. (Id. ¶¶ 24, 25).

## COURT'S DISCUSSION

A.  Standard of Review

In reviewing a motion for judgment on the pleadings, the court "appl[ies] the same standard as a 12(b)(6) motion to dismiss." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012) (citing Burbach Broad. Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002)). To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.  Analysis

1.  Statute of Limitations

"Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, see Fed.R.Civ.P. 8(c), and the burden of establishing the affirmative

defense rests on the defendant." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). "[A] motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein." Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011). Dismissal under Rule 12(b)(6) based on affirmative defenses only "is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Id.

In North Carolina, a Title VII plaintiff must file a charge of discrimination no later than 180 days after the unlawful discrimination occurred. See 42 U.S.C. § 2000e-5(e)(1); Belton v. City of Charlotte, 175 F. App'x 641, 654 (4th Cir. 2006); Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 543 (E.D.N.C. 2008); Lane v. Lucent Techs., Inc., 388 F. Supp. 2d 590, 598 (M.D.N.C. 2005). "The analysis for the limitations period turns on the nature of the specific legal claim at issue." Green v. Brennan, 136 S. Ct. 1769, 1781 n.7 (2016). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges . . . . The charge, therefore, must be filed within the [180–day] time period after the discrete discriminatory act occurred." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

In the case of a hostile work environment claim, "the employee need only file a charge within [180 days] of any act that is part of the hostile work environment." Id. at 118. "The continuing violation theory allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination." Holland v. Washington Homes, Inc., 487 F.3d 208, 219–20 (4th Cir. 2007). "[E]ven if most of the harassing conduct on which a plaintiff relies to establish her hostile work environment claim occurred outside the statutory period, the claim will be considered timely if at least one act continuing the violation occurred within the statutory period." Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208,

221–22 (4th Cir. 2016).

"[A] claim that an employer constructively discharged an employee is no different from a claim that an employer actually discharged an employee." Green, 136 S. Ct. at 1777. "The claim accrues when the employee is fired . . . . So at that point—and not before—the limitations period begins to run." Id.

Plaintiff filed her EEOC charge in March 2015, asserting a continuing violation of her rights under Title VII based on various forms of harassment. (Compl. ¶ 25; EEOC charge (DE 25-1) at 1–2). Plaintiff was hired on October 22, 2012, and quit her job with defendant on April 18, 2015. (Compl. ¶¶ 7, 24). Plaintiff alleges that "during the course of her employment" she was treated differently in a number of ways because she is Hispanic. (Id. ¶ 14). Plaintiff also alleges that she complained of disparate treatment "during the course of her employment" and that "after complaining of disparate treatment" she suffered various retaliatory actions contributing to a hostile work environment. (Id. ¶¶ 12, 19).

Viewing the facts in light most favorable to plaintiff, the complaint does not clearly reveal a meritorious statute of limitations defense. See Brockington, 637 F.3d at 506. Contrary to its assertion, defendant has the burden of proving an affirmative defense bars plaintiff's claims where, as here, plaintiff has exhausted her administrative remedies. (See Compl. ¶ 25; EEOC charge (DE 25-1)). At this juncture, defendant has failed to do so.

2. Disparate Treatment

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). "[I]f a plaintiff is able to produce direct evidence of discrimination, [s]he

may prevail without proving all the elements of a prima facie case." McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 584–85 (4th Cir. 2015) (quoting Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511 (2002)). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class."[1] Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).

"An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" Holland, 487 F.3d at 219 (quoting James v. Booz–Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)). Adverse employment actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." Ray v. Int'l Paper Co., 909 F.3d 661, 670 (4th Cir. 2018) (quoting Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999)). A denial of transfer "can only form the basis of a valid Title VII claim" where the plaintiff alleges the denial "had some significant detrimental effect on her." Boone, 178 F.3d at 256; Royster v. Costco Wholesale Corp., 378 F. Supp. 2d 595, 605 (M.D.N.C. 2005). Denial of vacation time and preferred work hours, as well as and reprimands without tangible consequences, are not adverse employment actions. See Natofsky v. City of New York, 921 F.3d 337, 351–52 (2d Cir. 2019); Bhatti v. Trustees of Bos. Univ., 659 F.3d 64, 73 (1st Cir. 2011).

Plaintiff alleges that defendant "strictly adher[ed] to company policy" regarding vacation,

---

[1] Defendant moves to dismiss on the grounds that plaintiff has not alleged an adverse employment action, and has not alleged different treatment from similarly situated employees outside the class. (See Def. Br.(DE 25) at 11–13). Therefore, the court only addresses those elements of the prima facie case in its analysis.

sick days and tardiness, and that she was more regularly denied breaks than non-Hispanic employees in the department. (Compl. ¶¶ 14.a.. 14.b.). She alleges that someone undermined her efforts to transfer to another department. (Id. ¶ 19.b.). She also alleges several other differences in treatment between Hispanic and non-Hispanic employees. (See id. ¶¶ 14, 19). None of the conduct plaintiff alleges constitutes an adverse employment action under Title VII.

Plaintiff argues that being denied vacation days is an adverse employment action. (Pl. Brief (DE 33) at 10). The court rejects this assertion where plaintiff merely alleges that defendant "strictly adher[ed] to company policy" concerning vacation. (See Compl. ¶ 19.a.). Plaintiff also speculates that "denials of transfers within WakeMed prevented [plaintiff] from finding additional opportunities for promotion." (Pl. Brief (DE 33) at 10). The complaint merely alleges denial of transfer. (See Compl. ¶ 19.b.). The court rejects plaintiff's unwarranted inference that denial of her transfer requests is equivalent to a denial of promotion. See Nemet Chevrolet, 591 F.3d at 255.

Having failed to allege any adverse employment action,[2] the court dismisses plaintiff's disparate treatment claim without prejudice.

3. Retaliation

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). Plaintiff may prove retaliation "either through direct and indirect evidence of retaliatory animus" or through the burden shifting framework articulated by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015). "The elements of a prima facie retaliation claim under Title VII are: (1)

---

[2] Plaintiff does allege constructive discharge based on a hostile working environment. (See Compl. ¶¶ 29–30). The court addresses plaintiff's constructive discharge claim below.

7

engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." Coleman, 626 F.3d at 190.

"The requirement of an adverse employment action seeks to differentiate those harms that work a significant detriment on employees from those that are relatively insubstantial or trivial." Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 431 (4th Cir. 2015). For purposes of a Title VII retaliation claim, an adverse employment action is any "materially adverse" action. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). A "materially adverse" action is one that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." Id. (internal citations omitted). "[A]lthough an adverse action need not affect the terms and conditions of employment, there must be some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it." Ray v. Int'l Paper Co., 909 F.3d 661, 670 (4th Cir. 2018) (internal quotations and citations omitted).

Plaintiff alleges that supervisors yelled at her, commented that she was not a good fit for the departments she worked in, and twice reprimanded her for poor work performance. (Compl. ¶¶ 16, 18, 19.a., 19.c.). These actions are not sufficiently severe to be materially adverse to a reasonable employee. See White, 548 U.S. at 68 ("[N]ormally petty slights, minor annoyances, and simple lack of good manners" are not adverse actions.); Adams, 789 F.3d at 431 ("[R]eprimands and poor performance evaluations occur with some frequency in the workplace."). The remaining actions that plaintiff alleges, including sabotaging plaintiff's efforts to transfer to another department, scheduling plaintiff so she could not have a lunch break, and forcing plaintiff to take a flu shot to which she is allergic could rise to the level of materially adverse actions. (See Compl. ¶¶ 19.b., 19.d., 19.e.).

However, plaintiff fails to allege a causal connection between complaining of disparate treatment and the alleged retaliatory actions. A plaintiff may allege prima facie evidence of a causal

8

connection where retaliatory actions occur shortly after making a complaint. See Strothers v. City of Laurel, Maryland, 895 F.3d 317, 337 (4th Cir. 2018). Plaintiff does not allege that any potentially retaliatory actions occurred shortly after complaining of disparate treatment. (See Compl. ¶ 19 (alleging generally that retaliatory actions occurred "after complaining of disparate treatment")).

Plaintiff attempts to allege a causal connection by pointing to temporal proximity between complaining to Daniels on February 21, 2013, and receiving a reprimand on March 15, 2013. (Pl. Brief (DE 33) at 13 (citing Compl. ¶¶ 15, 16)). As noted above, receipt of a reprimand is not an adverse action. Such temporal connection also has no apparent relevance to the other actions taken by defendant's employees. Plaintiff also boldly asserts that "[t]here is no smoking gun in this case, but there is a direct line between [plaintiff] complaining of mistreatment of Hispanics to increased mistreatment of [plaintiff] by supervisors." (Pl. Brief (DE 33) at 14). The court rejects plaintiff's assertion as speculative. In the absence of any adverse actions which are causally connected to plaintiff's protected activity, plaintiff fails to plausibly state a claim for retaliation.

4. Hostile Work Environment

"Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 313 (4th Cir. 2008). "[A] plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's ... [national origin]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc).

"The 'severe or pervasive' element has both subjective and objective components." Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003) (en banc). In considering

9

whether a working environment is objectively hostile, the court looks at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life." Sunbelt Rentals, 521 F.3d at 315; see E.E.O.C. v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 328 (4th Cir. 2010).

The United States Court of Appeals for the Fourth Circuit has not directly addressed when selective enforcement of company policies gives rise to a hostile work environment claim. In Bhatti, the United States Court of Appeals for the First Circuit considered whether plaintiff established a hostile work environment claim based on "work[ing] longer hours than her white counterparts, the unwritten rule about time off that applied to her coworkers but not to her, and [defendant's] selective enforcement of workplace rules against her in the form of critical memoranda." 659 F.3d at 74. There, the court concluded defendant's conduct "was far from severe" and had "no effect whatsoever on her work performance." Id.; see also Brooks v. Grundmann, 748 F.3d 1273, 1276 (D.C. Cir. 2014) ("[S]elective enforcement of a time and attendance policy does not necessarily indicate conduct giving rise to a hostile work environment claim."); Alfano v. Costello, 294 F.3d 365, 376 (2d Cir. 2002) (holding claims that employer selectively enforced company policy insufficient to show hostile working environment).

The instant case is analogous to Bhatti. Plaintiff alleges that defendant granted vacation requests for non-Hispanic employees "outside the norms of Wakemed policy." (Compl. ¶ 14.a.). Plaintiff was required to work longer hours because she was denied breaks, required to keep her

10

"available" light on when other non-Hispanic employees were not, and could not keep personal items on a desk. (Id. ¶ 14.b., 14.c., 14.d.; see id. ¶ 19.d.). Finally, plaintiff contends she was reprimanded for violating workplace rules, such as no use of cell phones at work, which were selectively enforced against Hispanic employees. (See id. ¶¶ 14.e., 16, 18).

Considering the totality of the circumstances on the facts alleged, plaintiff fails to state a claim for hostile work environment under Title VII. The conduct alleged is not severe, physically threatening or humiliating. Additionally, plaintiff does not allege that such conduct unreasonably interfered with performance of her job.

Plaintiff argues that defendant's threat of discipline for violating its English-only policy created a hostile work environment based on national origin. (Compl. ¶¶ 9, 11). "Prohibiting employees at all times, in the workplace, from speaking their primary language or the language they speak most comfortably . . . may [] create an atmosphere of inferiority, isolation and intimidation based on national origin which could result in a discriminatory working environment." 29 C.F.R. § 1606.7(a). However, plaintiff does not allege in this instance the English-only policy was humiliating, threatening, or negatively affected her ability to perform her job. See Harris, 510 U.S. at 23; Garcia v. Spun Steak Co., 998 F.2d 1480, 1489 (9th Cir. 1993). Consequently, plaintiff's allegations regarding defendant's English-only rule are insufficient to state a claim for hostile work environment.

Plaintiff also argues that being yelled at, denied the ability to transfer to another department, scheduled to work during lunch, and taking a flu shot to which she was allergic created a hostile working environment based on her national origin. (Pl. Brief (DE 33) at 15). To establish that harassment was based on national origin, plaintiff "must show that 'but for' [her] [national origin] . . . , [she] would not have been the victim of the alleged discrimination." Gilliam v. S.C. Dep't Of

11

Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007). As noted above in the court's discussion of plaintiff's retaliation claim, plaintiff has failed to even allege a bare temporal connection between defendant's alleged retaliatory conduct and plaintiff's complaints about mistreatment of Hispanic employees. Therefore, plaintiff fails to allege such conduct is because of national origin.

Where plaintiff's factual allegations are insufficient to state a claim for hostile work environment, the court dismisses the claim without prejudice.

5. Constructive Discharge

"To prove constructive discharge, a plaintiff must at the outset show that his employer 'deliberately made [his] working conditions intolerable in an effort to induce [him] to quit.'" Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006) (quoting Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 272 (4th Cir. 2001)). "Whether an employment environment is intolerable is determined from the objective perspective of a reasonable person." Heiko, 434 F.3d at 262 (citing Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004)). "However, mere '[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.'" James, 368 F.3d at 378 (quoting Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994)).

For the reasons discussed by the court above, plaintiff has failed to show that her workplace conditions were objectively severe or pervasive enough to create a hostile working environment. For the same reasons, the court concludes that plaintiff does not allege her working conditions were so intolerable that she was forced to quit. Plaintiff's constructive discharge claim is dismissed without prejudice.

**CONCLUSION**

Based on the foregoing, defendant's motion for judgment on the pleadings (DE 24) is

GRANTED. Plaintiff's claims are DISMISSED WITHOUT PREJUDICE. Within 21 days, plaintiff is ALLOWED to file motion to amend, together with proposed amended complaint, correcting the deficiencies noted herein. Should plaintiff fail to so file, the clerk is DIRECTED to close this case without further order from the court.

SO ORDERED, this the 6th day of August, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge